# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **GLENNEY DALE MADISON,** | ) |
| Petitioner, | ) ) ) |
| v. | ) Case No. CIV 18-243-RAW-KEW |
| **JOE ALLBAUGH, DOC Director,** | ) ) ) |
| Respondent. | ) |

## **OPINION AND ORDER**

This action is before the Court on Respondent's motion to dismiss Petitioner's petition for a writ of habeas corpus as barred by the statute of limitations. (Dkt. 7). Petitioner is a prisoner in the custody of the Oklahoma Department of Corrections who is incarcerated at Davis Correctional Facility in Holdenville, Oklahoma. He is attacking his convictions and sentences in McCurtain County District Court Case No. CF-1995-258 for First Degree Murder (Count 1) and Second Degree Murder (Count 2).

Petitioner is represented by counsel and, therefore, is not entitled to the same liberal construction of his pleadings as those of a pro se litigant. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers"); *Sullivan v. Rios*, No. CIV-15-67-M, 2015 WL 4926475, at *4 (W.D. Okla. June 12, 2015) (unpublished) (refusing to give liberal construction "[b]ecause the petition is counsel's work-product, [and] it must be read as written").

Two grounds for habeas corpus relief are raised in the petition:

**Ground I:** The petitioner's newly-discovered evidence undermines the jury verdict and is exculpatory to First Degree Malice Murder, as the state court decision is unreasonable in light of prevailing norms and in light of the evidence.

**Ground II:** The state court made an unreasonable determination of facts in light of the evidence demonstrating that Petitioner was a juvenile at the time of the offenses, further making an unreasonable determination that the intervening change in law recognized in *Montgomery v. Louisiana* is not applicable to Petitioner.

**Factual Background**

The Oklahoma Court of Criminal Appeals (OCCA) set forth the facts of Petitioner's case in its order affirming his Judgments and Sentences:

> Steven Morgan was killed over an electrical generator. He had a campsite in the Wright City vicinity in the woods, close to the Glover River. In September 1995, he and a friend, Orville Lewis Bullard, went camping.
>
> Morgan had several conveniences at the site: he had converted a bread van into a camper, and had a pair of bunk beds at the rear of the van. He had also rigged up some propane stoves for cooking, and had several ice chests full of squirrel and fish he had caught. He also had a 4,000-watt Coleman generator which produced electricity for lights in the evening.
>
> Four hundred yards from the Morgan campsite, [Petitioner] and some friends were staying at another campsite. The first night they arrived, [Petitioner] and his friends heard the generator in the distance. One of the company, Michael Delozier,[1] commented on the generator and mentioned they should steal it. Nothing else was done or said about it that night. The next day the group rode four-wheelers in the area. That second night, they again heard the generator running; and again, Delozier mentioned it. The next day, the group rode over to the nearby camp, visited with those present,

---

[1] Delozier was tried in a separate proceeding and was convicted of two counts of first degree murder. *Delozier v. Sirmons*, 531 F.3d 1306 (10th Cir. 2008), *cert. denied*, 556 U.S. 1211 (2009). He was executed for his crimes in 2009. *State v. Madison*, No. CF-1995-258 B, slip op. at 1 (McCurtain County Dist. Ct. Aug. 1, 2017) (Dkt. 8-2). Nathaniel Madison pleaded guilty to two counts of Conspiracy and was sentenced to ten years of incarceration. *Id.* The Court takes judicial notice of the Oklahoma State Courts Network at http://www.oscn.net.

and saw the generator and other items present.

That night, Delozier again mentioned stealing the generator, adding they should go to the campsite, kill everyone present, and take everything in the camp. [Petitioner] and his cousin, Nathaniel Madison, agreed. A fourth party, James Oliver, refused to go along with the idea. As Oliver went to bed, [Petitioner] and Delozier grabbed some weapons and, accompanied by Nathaniel, walked over to the Morgan camp. Once there, Delozier and [Petitioner] approached the camper. Delozier opened the camper door, took one step in, pointed his 12-gauge shotgun toward the back of the camper, and fired once.

[Petitioner] then stepped in, pointed his .22 rifle toward the back, and fired once. The group then retreated to a nearby pickup, where [Petitioner] fired approximately seven more shots through the front window of the camper. The .22 rifle he was carrying was a single-shot bolt rifle, and [Petitioner] had to reload before firing each time. Nathaniel, at Delozier's request, shouted several times for the camper's occupants to come out. After approximately 10 to 15 minutes, Morgan appeared at the door with a flashlight. Delozier ordered him to turn off the flashlight. When Morgan did so, Delozier shot him in the chest.

Morgan said "Oh, God," and fell to the ground. As he was lying there, [Petitioner] and Delozier approached him. Delozier took the rifle from [Petitioner], pointed it at Morgan's face, and fired.

The trio then took a number of items, including the generator and some shotguns, from the Morgan camp back to their camp, using a pickup at the Morgan camp. On the way back to the campsite for a third load, the trio saw vehicle headlights at the Morgan camp. Delozier, who was driving, stopped the pickup and ran into the woods. [Petitioner] and Nathaniel did likewise. As [Petitioner] and Nathaniel made their way back to their own campsite, they saw a fire where the pickup had been left. A short time later, they saw a fire where the Morgan campground was.

The cause of death to Morgan was determined to be both the shotgun wound to the chest and the rifle wound to the head. Bullard was killed as he lay in the camper during the initial attack: he received a .22 bullet in his brain, and pellets from the shotgun blast penetrated his heart. Both wounds were fatal, although the medical examiner said Bullard was still alive when

3

> he received the shot to the head. Although both bodies were badly burned, this did not contribute to the cause of death.

*Morgan v. State*, No. F-1996-1064, slip op. at __ (Okla. Crim. App. Oct. 29, 1997) (Dkt. 8-1 at 1-2). The OCCA's factual findings are entitled to a presumption of correctness, unless Petitioner produces clear and convincing evidence to rebut the presumption. 28 U.S.C. § 2254(e)(1).

**Ground I:   Newly-Discovered Evidence**

Petitioner alleges newly-discovered evidence of Michael Delozier's clemency hearing undermined Petitioner's conviction for First Degree Murder. Petitioner argues that Delozier's admission in the hearing of his guilt in killing the two victims, when contrasted with Delozier's previous denial of responsibility, undermines confidence in Petitioner's verdict. He further asserts DeLozier's statements in the clemency hearing created an issue of Petitioner's factual innocence, leaving the jury's verdict unreliable.

On May 19, 2017, Petitioner presented this claim to the state district court in an application for post-conviction relief. *State v. Madison*, No. CF-1995-258-B, slip op. at 1 (McCurtain County Dist. Ct. Aug. 1, 2017) (Dkt. 8-2). Petitioner argued that "DeLozier admitted before being executed [in the clemency hearing recording] that he was the person that murdered the two victims and that he was solely responsible for the crimes of murder, which is a fact that he had previously denied." (Dkt. 2-2 at 12). An evidentiary hearing was held on July 11, 2017, where a recording of DeLozier's appearance seeking clemency before the Oklahoma Pardon and Parole Board for was played. *Id*. at 2. The state district

4

denied post-conviction relief as follows:

> The statements in the clemency hearing of co-defendant DeLozier in no way constitutes an admission that *he was the person that murdered the two victims* **and** *that he was solely responsible for the crimes of murder*. There was never any attempt to exonerate petitioner or the other co-defendant at the hearing.

*Madison*, No. CF-1995-258-B, slip. op. at 3 (emphasis in original). The OCCA affirmed in *Madison v. State*, No. PC-2017-810 (Okla. Crim. App. May 7, 2018) (Dkt. 8-3). Again, these findings are entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1).

**Statute of Limitations**

Respondent alleges the petition was filed beyond the one-year statute of limitations imposed by the Antiterrorism and Effective Death Penalty Act of 1996, codified at 28 U.S.C. § 2244(d) (AEDPA).

Section 2244(d) provides that:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

The record shows that Petitioner's Judgments and Sentences were affirmed by the OCCA on October 29, 1997 in Case No. F-1996-1064. (Dkt. 8-1). His conviction, therefore, became final on January 27, 1998, upon expiration of the 90-day period for a certiorari appeal to the United States Supreme Court. *See Fleming v. Evans*, 481 F.3d 1249, 1257-58 (10th Cir. 2007); *Locke v. Saffle*, 237 F.3d 1269, 1273 (10th Cir. 2001) (holding that a conviction becomes final for habeas purposes when the 90-day period for filing a petition for a writ of certiorari to the United States Supreme Court has passed). The statutory year began to run the next day on January 28, 1998, and it expired on January 28, 1999. *See Harris v. Dinwiddie*, 642 F.3d 902, 907 n.6 (10th Cir. 2011) (stating that the year begins to run the day after the judgment and sentence becomes final and ends on the anniversary date). This habeas corpus petition, filed on July 31, 2018, was untimely.

Pursuant to 28 U.S.C. § 2244(d)(2), the statute of limitations is tolled while a properly-filed application for post-conviction relief or other collateral review of the judgment at issue is pending. State procedural law determines whether an application for state post-conviction relief is "properly filed." *Garcia v. Shanks*, 351 F.3d 468, 471 (10th

Cir. 2003). Petitioner's post-conviction application was filed on May 19, 2017 (Dkt. 8-2), and the OCCA affirmed the denial of relief in Case No. PC-2017-810 on May 7, 2018. (Dkt 8-3). These attempts to obtain post-conviction relief before the state courts, however, cannot serve to toll an already expired statute of limitations. *See May v. Workman*, 339 F.3d 1236, 1237 (10th Cir. 2003). This habeas corpus petition filed on July 31, 2018, was almost 20 years too late.

In his response to the motion to dismiss, Petitioner contends that, pursuant to 28 U.S.C. § 2244(d)(1)(D), the factual predicate of his claim in Ground I was not discovered until the OCCA affirmed the denial of post-conviction relief on May 7, 2018, and the one-year limitation period began on that date. (Dkt. 9 at 2). Petitioner has not pleaded or proven that he is entitled to a new start date on his limitation period, or that he is entitled to equitable tolling to save this untimely petition. Instead, he asserts, without argument or authority, that with respect to Ground I, the newly-discovered evidence and his state-court evidentiary hearing "restarted the AEDPA, as the conviction was no longer final after the record was opened and expanded." (Dkt. 2 at 10). Section 2244(d)(1)(D), however, states the limitation period runs from "the date on which the factual predicate of the claim or claims presented *could have been discovered through the exercise of due diligence*." *Id. See also Burger v. Scott*, 317 F.3d 1133, 1136 (10th Cir. 2003).

Petitioner's counsel has unsuccessfully presented similar "expansion of the record" arguments in other habeas corpus actions. In *Decker v. Braggs,* No. CIV-18-443-C, slip

op. at 7, 2018 WL 4346107, at *3 (W.D. Okla. Aug. 21, 2018 (unpublished) (Dkt. 8-4), *report and recommendation adopted,* 2018 WL 4344467 (W.D. Okla. Sept. 11, 2018), the petitioner argued that an evidentiary hearing held years after his conviction was final "expanded the record with the conviction no longer being final." The Western District Court found the argument was without support under the AEDPA. *Id*. Also, in *Thomas v. Aldridge*, No. 10-CV-JED-FHM, 2018 WL 2224069, at *2, (N.D. Okla. May 15, 2018) (unpublished), the petitioner claimed oral argument on a state habeas action "expanded the record" to make the petition timely. The Northern District Court, however, found this argument was "contrary to the express language of § 2244, which provides a conviction becomes final at the 'conclusion of direct review.'" *Id*. (citing 28 U.S.C. § 2244(d)(1)(A).

The Court finds that for the purpose of this habeas action, the clemency hearing was not newly-discovered, as the information in DeLozier's statement could have been discovered at the latest in 2009, when the clemency hearing was held, and at the earliest it was known to Petitioner at the time of the crimes and the trials in 1995 and 1996. *See United States v. Muldrow*, 19 F.3d 1332, 1339 (10th Cir. 1994) (holding a co-defendant's subsequent testimony was not "newly discovered" evidence, because "the substance of his testimony was known" before trial). The factual predicate in Petitioner's case certainly was known by May 19, 2017, when his habeas counsel filed the application for post-conviction relief in the state district court. Thus, the Court further finds Petitioner has failed to demonstrate, as required by § 2244(d)(1)(D), that he has exercised due diligence

8

in securing the factual predicate underlying his claim. *See Easterwood v. Champion*, 213 F.3d 1321, 1323 (10th Cir. 2000) (finding a petitioner had adequately demonstrated due diligence in discovering the factual predicate of a newly released case applicable to his conviction). *See also Lott v. Coyle*, 261 F.3d 594, 605 (6th Cir. 2001) (rejecting a petitioner's claim because he failed to show due diligence in the pursuit of the factual predicate).

The Court also finds Petitioner cannot establish he is actually innocent, which would entitle him to equitable tolling to overcome the time bar. Equitable tolling of § 2244(d)(1)'s one-year statute of limitations is available "only in rare and exceptional circumstances." *York v. Galetka*, 314 F.3d 522, 527 (10th Cir. 2003). "[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)) (internal quotation marks omitted).

> Equitable tolling would be appropriate, for example, when a prisoner is actually innocent, when an adversary's conduct--or other uncontrollable circumstances--prevents a prisoner from timely filing, or when a prisoner actively pursues judicial remedies but files a defective pleading during the statutory period. Simple excusable neglect is not sufficient. Moreover, a petitioner must diligently pursue his federal habeas claims . . . .

*Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000) (citations and quotations omitted).

Here, Petitioner attempts only to make a generalized, freestanding claim of actual innocence. "[A]ctual innocence' means factual innocence, not mere legal insufficiency."

9

*Bousley v. United States*, 523 U.S. 614, 623-24 (1998) (citation omitted). "[T]enable actual-innocence gateway pleas are rare," *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013), and the threshold for showing actual innocence is "extraordinarily high," *Herrera v. Collins*, 506 U.S. 390, 417 (1993). "To invoke the miscarriage of justice exception to AEDPA's statute of limitations, . . . a petitioner 'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Perkins*, 569 U.S. at 399 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

The Court finds Petitioner has not met this burden. He has not shown he did not commit the crimes, and DeLozier's statements at his clemency hearing, which were made in an attempt to spare his life, cannot be considered a "trustworthy eyewitness account[]." *Schlup*, 513 U.S. at 324. This evidence offered by Petitioner, which cannot be subject to further examination, clearly falls far short of a "truly persuasive demonstration of 'actual innocence.'" *Herrera v. Collins*, 506 U.S. 390, 417 (1998). Even if, however, DeLozier's statements were "new reliable evidence," Petitioner has failed to persuade the Court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 329. Because Petitioner cannot demonstrate his actual innocence, he is not entitled to equitable tolling, and Ground I of the petition is time barred.

**Ground II: Petitioner's Adult Status**

Petitioner alleges in Ground II that the state court erroneously determined he was

not a juvenile at the time of the offenses. He claims that "[w]hile [he] was just over the age of 18, he was still a juvenile in the way of brain development. Science in this area is not a novel arena as to brain development . . . ." (Dkt. 2 at 21). Petitioner's traumatic childhood, his below-average intelligence, and his drug history, among other things, allegedly are indications he should not have been convicted and sentenced as an adult. *Id.* at 21-22.

On post-conviction review, the OCCA affirmed the state district court's denial of relief on this claim. *Madison*, No. PC-2017-810. The state appellate court found Petitioner had not established that the cited authority concerning juvenile considerations applied, because "Petitioner was an adult at the time the offenses were committed." *Id.*, slip op. at 3.

Respondent makes the following statement regarding this claim:

Respondent would note, without addressing the merits of the claim, that Petitioner readily admits he was over 18 years of age when he committed the offense. Therefore, these cases, drawing a bright line rule applicable to juveniles defined by the Supreme Court as under the age of 18, are not applicable to Petitioner but nonetheless the claim is untimely. *See Miller*, 567 U.S. at 465 ("We [] hold that mandatory life without parole for those **under the age of 18 at the time of their crimes** . . . .") (emphasis added).

(Dkt. 8 at 19 n. 15).

Petitioner cites *Montgomery v. Louisiana*, __ U.S. __, 136 S.Ct. 718 (2016), in support of the timeliness of this habeas claim. *Montgomery* held that the Supreme Court's decision in *Miller v. Alabama*, 567 U.S. 460 (2012), which prohibited under the Eighth

11

Amendment mandatory life sentences without parole for juvenile offenders, announced a new, substantive constitutional rule that was retroactive on state collateral review. *Montgomery*, 136 S.Ct. at 736-37. Petitioner claims *Montgomery* was an intervening change in the law that retroactively applied to him, even though he was legally an adult.

Petitioner's claim in Ground II is similar to one made by the same habeas counsel in *Walker v. Aldridge*, No. CIV-18-382-HE, 2018 WL 3240965 (W.D. Okla. July 3, 2018) (unpublished) (order adopting report and recommendation (Dkt. 8-5)). In that case, the petitioner was 16 years old at the time of her crime. *Id.*, 2018 WL 3240965, at *1. On September 30, 1996, she was convicted by a jury of first degree murder and sentenced to life imprisonment with the possibility of parole. *Id.* On September 21, 2017, more than 19 years after the OCCA affirmed her conviction and sentence, she filed a state post-conviction action, claiming her sentence for the murder she committed as a juvenile violated the Eighth Amendment. *Id.* The state district court denied relief, because petitioner had not received a sentence of life without the possibility of parole. *Id.* The OCCA affirmed on April 10, 2018.[2]

In Walker's federal habeas petition, the Western District Court determined the petition was filed after the AEDPA's one-year limitation period. *Id.* at *1. The Court analyzed the case under *Dodd v. United States*, 545 U.S. 353 (2005), which held the

---

[2] The Court takes judicial notice of the PACER federal court records available on the internet.

AEDPA's limitation period for filing a § 2255 motion to vacate began on the date the Supreme Court initially recognized the right asserted, not from the date the right asserted was made retroactively applicable. *Id.* at 357. Therefore, the limitation period began when the Supreme Court decided *Miller* on June 25, 2012. *Id*. Under 28 U.S.C. § 2244(d)(1)(D), Walker had one year from that date to file a federal habeas petition. *Id*. Because the Western District found there was no basis for statutory or equitable tolling, the filing deadline was June 25, 2013. *Id*. at *2.[3] Walker's habeas corpus petition, filed in 2018, clearly was barred by the statute of limitations. *Id*. at *2-*3.

Similarly, in *Moore v. Martin*, No. CIV-18-409-R (W.D. Okla. June 7, 2018) (Dkt. 8-6) (unpublished report and recommendation), *adopted by district court*, 2018 WL 4615985 (Sept. 26, 2018), the petitioner raised the same claim, through the same counsel in this case and in *Walker*. Citing the same line of authority interpreting *Dodd*, as well as the *Walker* case, the Magistrate Judge found Moore's statute of limitations also began on June 25, 2012, the date of the *Miller* decision. *Id.*, slip op. at 3-4. With no entitlement to statutory or equitable tolling, the petition, filed on April 27, 2018, was time-barred. *Id*. at 5-8.

The Supreme Court issued its *Miller* decision on June 25, 2012. Therefore, in this

---

[3] This Court finds the statutory year began to run the day after the decision on June 26, 2012, and it expired on June 26, 2013. *See Harris v. Dinwiddie*, 642 F.3d 902, 907 n.6 (10th Cir. 2011) (stating that the year begins to run the day after the judgment and sentence becomes final and ends on the anniversary date).

case, Petitioner's statutory year to file a habeas petition based on *Miller* began on June 26, 2012 and ended on June 26, 2013. Petitioner's post-conviction application was not filed until May 19, 2017, almost four years after the deadline, and this habeas petition was not filed until July 31, 2018. The claim is untimely.

Petitioner contends, without any argument, that *Virginia v. LeBlanc*, 582 U.S. __, 137 S.Ct. 1726 (2017), is "applicable to this case." (Dkt. 2 at 10). He fails, however, to support this assertion with any case holding that *LeBlanc* was a new rule of law made retroactive by the Supreme Court to support his claim that the case could restart to extend his limitation period. He bears the burden to prove that any other trigger date set forth in § 2244(d)(1) should start the statute of limitations. *See Chavez v. Workman*, No. 05--CV-554, 2006 WL 2251718, at *3 (N.D. Okla. Aug. 4, 2006) (unpublished) (petitioner carries some burden to show why a date other than the date of the conviction's becoming final should be used to calculate the running of time).

The Court finds Petitioner's reliance on *LeBlanc* does not save his untimely petition. *LeBlanc* did not set forth a new rule of law made retroactive by the Supreme Court. Instead, it merely interpreted and applied *Graham v. Florida*, 560 U.S. 48 (2010), in a federal habeas case, while reviewing a State court decision under the AEDPA standard. In *Moore*, the Magistrate Judge flatly rejected a *LeBlanc* claim:

> Petitioner also suggests that the Supreme Court's decision in *Virginia v. LeBlanc*, [582] U.S. _, 137 S.Ct. 1726 (2017) would "further extend" her statute of limitations. Pet. at 8-9. However, Petitioner does not explain this statement, and the Court cannot discern an applicable argument. That is, the

14

> Supreme Court held in *LeBlanc* that "it was not objectively unreasonable for the state court to conclude that, because [Virginia's] geriatric release program employed normal parole factors, it satisfied *Graham's* requirement that juveniles convicted of nonhomicide crime have a meaningful opportunity to receive parole." *Id.* at 1729. It is unclear how Petitioner believes this case law would "extend" her limitations period.

*Moore*, slip op. at 6 n.3. *See also Walker*, slip op. at 5 n.3 (Dkt. 8-10) (containing identical language about the petitioner's argument on *LeBlanc*).

After careful review, the Court finds *LeBlanc* does not save this claim from its untimeliness. In addition, the Court further finds Petitioner did not diligently pursue his rights with respect to Ground II. Therefore, this claim also is barred by the statute of limitations.

**Certificate of Appealability**

The Court further finds Petitioner has not shown "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether [this] court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). *See also* 28 U.S.C. § 2253(c). Therefore, Petitioner is denied a certificate of appealability. *See* Rule 11(a) of the Rules Governing Section 2254 Cases.

**ACCORDINGLY,** Respondent's motion to dismiss time-barred petition (Docket No. 7) is GRANTED, and Petitioner is DENIED a certificate of appealability.

**IT IS SO ORDERED** this 21st day of March 2019.

15

Ronald A. White
United States District Judge
Eastern District of Oklahoma